# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

CORY S. CRUGHER, an Individual

    Plaintiff,

v.

WARDEN JOHN PRELESNIK, in his
Official and Individual Capacity,
    Defendant.

Case No. 13-

Hon.

Joni M. Fixel (P56712)
Collin H. Nyeholt (P74132)
Fixel Law Offices
Attorney for Plaintiffs
4084 Okemos Rd., Ste. B
Okemos, MI 48864
(517) 332-3390

## COMPLAINT and JURY DEMAND

NOW COMES Plaintiff, Cory S. Crugher who, by and through her attorneys, the Fixel Law Offices, and in support of this Complaint and Jury Demand states as follows:

### JURISDICTION AND PARTIES

1. Plaintiff CORY S. CRUGHER is a citizen of the United States and the State of Michigan and a permanent resident of Owosso, MI. At all times relevant to this Complaint, he was a Corrections Officer employed by the Michigan Department of Corrections ("MDOC").

2. Plaintiff is an *eligible employee* as defined by the FMLA.

1

3. Defendant WARDEN JOHN PRELESNIK is the Warden of the Ionia Maximum Correctional Facility, which is operated and controlled by the Michigan Department of Corrections, an agency of the State of Michigan.

4. This Honorable Court may exercise personal jurisdiction over the Defendant because the events giving rise to this claim occurred, and continue to occur, in Ionia, MI, which is the Defendant's principle place of business.

5. The Western District of Michigan is the proper venue to hear this claim, pursuant to 28 USC § 1391(b)(2) because a substantial portion of the events and omissions giving rise to this claim occurred in Ionia, MI which is within the Western District.

6. Plaintiff alleges interference with and retaliation for exercising his right to intermittent medical leave, guaranteed by 29 USC § 2601 *et seq.* He attempts to remedy the continuing violation of this right pursuant to the doctrine of *Ex Parte Young,* as interpreted by *Diaz v. Michigan Dep't of Corrections,* 703 F.3d 956 (2013). This Court, then, may exercise subject matter jurisdiction over this claim pursuant to 18 USC § 1331 as the claim involves a question of federal law.

## FACTS

7. Plaintiff repeats and re-alleges the factual statements and legal assertions contained in the previous numbered paragraphs as if fully restated herein.

8. Plaintiff began working for the Michigan Department of Corrections as a Corrections Officer on February 27, 1994.

9. Plaintiff was initially assigned to the Saginaw Mound correctional facility in Detroit, but was transferred to Saginaw in or about November of 1997.

10. In 1999, Plaintiff developed a chronic medical condition from which he will likely suffer for a lifetime. **Ex. H.** This condition has been identified as IBS and GAD disorder. This condition results in severe abdominal pain, diarrhea, bleeding, cramping, and fatigue. *Id.* This condition causes episodic flare-ups which prevent Plaintiff from performing his normal job functions and it is medically necessary for him to be absent from work during the flare-ups. *Id.* Plaintiff's physician estimated that the flare-ups will occur one time every six weeks and be of 24 hours or 1 day duration per episode. *Id.*

11. In 2005, despite the condition, Plaintiff was nominated for the Department's Lifesaving Award for his conduct on August 21, 2005 where he assisted and saved a man who was overturned in a ditch. **Ex. A.**

12. On March 6, 2007 Plaintiff was approved for intermittent FMLA leave to care for a medical condition. **Ex. B.**

13. Plaintiff used intermittent leave between March 17, 2007 and April 16, 2007. *Id.*

14. On September 16, 2009 Plaintiff was personally congratulated by the Warden for the Saginaw facility for his fifteen years of service with the Department of Corrections. **Ex. C.**

15. On or about November 24, 2009 Plaintiff was transferred to the Ionia Maximum Correctional Facility in Ionia, Michigan.

16. Plaintiff continued to suffer from a chronic medical condition. This condition required him, at times, to take leave pursuant to the self care provisions of the FMLA.

17. The regime at Ionia Max did not take kindly to Plaintiff's periodic medical leaves to care for his medical condition. From the beginning of his time at Ionia, Plaintiff was subject to harassment and intimidation because of his periodic medical leaves.

18. On or about February 10, 2010 Plaintiff was issued a written counseling memorandum related to his use of sick time.

19. On April 15, 2010 Constance Y. Partee, Human Resources Manager, wrote Plaintiff and indicated that he was "being placed on an interim rating due to non-compliance with the DOC Employee Handbook, Employment Requirements, 3. Use of Leave." **Ex. D.**

20. The Interim Employee Rating, authored by Captain L. Sandborn, criticized Plaintiff for his use of sick leave, and demanded excessive medical documentation for the known condition. **Ex. E.** The Interim Rating also cautioned that "[b]e advised, medical certification does not necessarily excuse your absence. Continued sick leave usage and incurring lost time during this rating period will result in an unsatisfactory rating, which may lead to further corrective action resulting in your separation from the MDOC. The period set for this Interim Rating is the next 90 days." *Id.*

21. On September 17, 2010 Captain Sandborn wrote again and indicated that "[d]uring the Interim Rating you're time and attendance was closely monitored. During the rating period you done [sic] exactly as you were instructed in the Interim Rating. You did not get any lost time and you did not utilize any sick leave." **Ex. F.**

22. In or about October of 2010, Sergeant B. Wenzel drafted a second "Interim Employee Rating." This document criticized Plaintiff for his use of sick leave at various points between August 13, 2010 and October 20, 2010. The document stated that "[a]s a result of your continuance to abuse your time and attendance, you are being placed back on interim rating for a period of 180 days from the date of this rating to closely monitor your performance." **Ex. G.**

23. Though this document was made available to Plaintiff after his termination, it was never actually presented to him. There is question as to whether Plaintiff was ever actually placed on this second Interim Rating, or whether it was considered and never acted upon.

24. On November 17, 2010 Plaintiff's physician, Doctor David J. Mohlman, signed a Certification of Employee's Serious Health Condition. **Ex. H.**

25. On November 22, 2010 Plaintiff was approved for intermittent medical leave from November 22, 2010 through May 21, 2011. **Ex. I.**

26. On November 23, 2010 Constance Y. Partee, Human Resources Manager, authored a memorandum to Plaintiff that indicated that he was being summoned to a Performance Rating Conference before Warden Smith, the Conference Holder, and Captain Sandborn, the Investigator, on November 30, 2010. The "alleged violation" was that Plaintiff was "being placed on an interim rating due to non-compliance with the DOC Employee Handbook, Employment Requirements, 3. Use of Leave." **Ex. J.**

27. Plaintiff believes that this document was never presented to him, and that he was never, in fact, placed on the second Interim Rating that this document threatened.

28. On December 31, 2010 Plaintiff received his Performance Management and Competency Rating Form. The rating form indicated that he "met expectations" on all areas for which he was evaluated, and did not note any negative performance issues for the year. **Ex. K.**

29. On January 11, 2011 Plaintiff was dismissed from State service. **Ex. L.** A letter from Constance Y. Partee, Human Resource Manager, indicated that this dismissal was "the final disposition of the action resulting from [Plaintiff's] performance conference." *Id.*

30. On January 14, 2011 Plaintiff's union filed a grievance on his behalf. **Ex. M.** The grievance incorrectly stated that he had been placed on a second Interim Rating (when, in fact,

this document was never issued) and incorrectly noted a corresponding investigation was "ongoing" when, in fact, it had uncovered no misconduct.

31. On 2/10/2011 Dr. Mohlman provided an additional Medical Statement pertaining to Plaintiff's medical condition. **Ex. N.**

32. On the same day, a third step grievance conference was held, in Plaintiff's absence, by the Michigan Department of Civil Service. **Ex. O.** The conference resulted in the following finding:

> Grievant contends that he was wrongfully discharged for unsatisfactory service. Grievant alleges that the facility is in violation of the MCO contract. Grievant requests to be reinstated and made whole. A third step grievance conference was held on February 10, 2010 with MCO representative Miss Smith[.] After further investigation of the grievance submitted, it is found that this grievant continued to liquidate sick leave in conjunction with regular days off an holidays. His unsatisfactory service occurred while on a second unsatisfactory service rating and last chance agreement. Therefore, in keeping with department policy for overfamiliar behavior, the grievant's discharge is for cause. There are no contract violations. Grievance denied. *Id.*

33. The determination was incorrect in that the report indicated that Plaintiff was on a "second unsatisfactory service rating" when, in fact, he had never been placed on the service rating.

34. Further, the finding of the Department of Civil Service found that Plaintiff's termination was correct because of his use of intermittent sick leave, an action on his part that is protected by the FMLA.

35. Plaintiff requested that his union take the matter to arbitration.

36. On May 22, 2011, despite the glaring errors in the Department of Civil Service's findings, the Michigan Corrections Organization contacted Plaintiff and informed him that the MCO Grievance Committee had not agreed to take his grievance to arbitration. **Ex. P.**

## COUNT ONE: REINSTATEMENT PURSUANT TO *EX PARTE YOUNG*

37. Plaintiff repeats and re-alleges the factual statements and legal assertions contained in the previous numbered paragraphs as if fully restated herein.

38. The Family Medical Leave Act creates a right in any *eligible employee*, as defined by the act, to take up to 12 weeks of "intermittent leave" within any twelve month period to care for a qualifying medical condition and gives them the right to be restored to a same or equivalent position upon returning to work without employer retaliation for having taken intermittent leave. 29 U.S.C. §§ 2612(a)(1), 2614(a)(1).

39. State employees are covered by the FMLA and thus have a right to intermittent leave without termination or retaliation.

40. Plaintiff was, therefore, an eligible employee.

41. Plaintiff, therefore, was entitled to intermittent leave to care for his serious medical condition, IBS and GAD.

42. The Department of Corrections was well aware that Plaintiff had this serious medical condition, and was well aware that he would have periodic flare-ups requiring him to take time off from work.

43. Plaintiff's right to be free from adverse work consequences resulting from intermittent leaves to care for his periodic flare-ups was and is protected by the intermittent leave provisions of the FMLA.

44. Plaintiff's right to return to work after his leave was and is guaranteed by the FMLA.

45. The Michigan Department of Corrections harassed Plaintiff and retaliated against him for taking periodic leaves to care for his serious medical condition. Plaintiff was, at several points,

written up for using sick leaves. And, the Department of Corrections ultimately offered his medical leaves as justification for his termination from State service.

46. Further, Plaintiff had a right to return to work after his leave was completed, guaranteed by the FMLA. This right has been violated.

47. Plaintiff's termination from State service, in retaliation for his exercise of right to intermittent medical leave guaranteed by the FMLA, and in violation of his right to return to the same or similar position following the completion of his leave, represents a continuing violation of his rights.

48. State officials, sued in their official capacity for prospective relief, are not entitled to Eleventh Amendment immunity from suit. *Ex Parte Young*, 209 US 123 (1908).

49. Claims for reinstatement are prospective in nature and appropriate subjects for *Ex Parte Young* actions. *Carten v. Kent State University*, 282 F.3d 391, 396 (6th Cir. 2002).

50. A party may prevail on a claim for reinstatement against a State Official, named in their official capacity, pursuant to *Ex Parte Young*, if it is shown that their termination was in violation of their right to intermittent leave guaranteed by the FMLA. *Diaz v. Michigan Dep't of Corrections*, 703 F.3d 956 (2013).

51. Plaintiff's termination was in violation of his right to intermittent leave, guaranteed by the FMLA.

52. Plaintiff, therefore, is entitled to an injunctive order from this Court requiring his reinstatement to his position.

## CONCLUSION AND REQUEST FOR RELIEF

WHEREFORE Plaintiff prays this Honorable Court grant him:

1. An injunctive order requiring Defendants to reinstate Plaintiff to his position with the Department of Corrections.

2. An award of any other relief, in law or equity, which this Honorable Court may deem just and proper given the circumstances of this matter.

## PLAINTIFF DEMANDS A JURY TRIAL

Respectfully Submitted,

Date: 4/16/2013

Collin H. Nyeholt (P74132)
FIXEL LAW OFFICES
Attorney for Plaintiff

## VERIFICATION

I, the undersigned, have read and made this Verified Complaint and attest that those facts stated of my own knowledge are, to the best of my knowledge and belief, true and those matters stated of which I have been informed I believe to be true after reasonable inquiry.

So certified,

                                               Cory S. Crugher        4-16-13 (date)